The Chief Justice

delivered the Opinion of the Court.
These are five several writs of error seeking the reversal of as many separate decrees against Wilcox, Dickerman and Lynde, book merchants in Louisville, trading in the style of “Wilcox & Dickerman.”
The bills were all filed on the 27th of October, 1834, for the purpose of attaching, and finally subjecting to the satisfaction of debts alleged to be due from the said firm to the complainants respectively, Dickerman’s interest in the books and choses in action of the concern, upon the alleged ground that books to the amount of at least thirty thousand dollars, had been bought with the fraudulent intention of never paying for them, and that, Dickerman having left this Commonwealth ‘‘about the 1st of September, 1834,” it was pretended that he had made to his co-partners a transfer of his interest in the books, which, if in fact ever made, was done with the fraudulent purpose of preventing any proceeding in rem, under the statute of 1796, and thereby securing the power of either converting the books into money, or of removing them, before judgments could be obtained by their creditors.
Wilcox and Lynde and Dickerman all answered the bills; and, without denying either their indebtedness as alleged, or the fraudulent purpose of evading the payment of their debts, a,s imputed in each bill, they insisted that “about the 1st of September, 1834,” Dickerman had, for a valuable consideration and bonafide, sold and transferred to Wilcox and Lynde, “all his interest, right *298 and title in and to their partnership concern;” and some time afterwards, a paper was exhibited which purports to have been an unaltested bill of sale from Dickerman to his co-partners, of all his interest in the books and choses in action, “in their possession and .under their control,” for the consideration of one dollar, and executed on the 1st of September, 1834, at Huntsville in Alabama.
Absence from the state, of one of several joint debtors, gives jurisdiction to a court of eq. to subject their choses in action & "effects," to the payment of the debt. And, if any conveyance has been made by the absent deft. to embarras creditors and prevent or defeat this remedy, the chancelor may set it aside.
All the cases having been.heard at once on the bills, answers and bill of sale alone — the Chancellor rendered, in each, a decree against the defendants, now plaintiffs in error — to reverse which these several writs of error are prosecuted.
The principal objection made here to the decree is an alleged want of jurisdiction to proceed in equity under the act of 1796, (Stat. Law, 191,) authorizing bill's of sequestration against absent debtors, and other persons resident in this state, “having in their hands, effects of, or otherwise indebted to, such absent defendant or defendants.”
In Curd et al. vs Letcher, (3 J. J. Marsh. 443,) this Court decided—and we doubt not correctly—that the absence from this state of one several joint debtors gave jurisdiction to a court of equity here to decree the subjection of a chose in action belonging to the absentee and his resident co-obligors; because, as the absentee’s interest the liable under a judgment against the residents alone, the ordinary legal remedy would be inadequate; and that, therefore, the act of 1796 was intended —as it may also literally import—to apply to such a state of case. Moreover, a court once having jurisdiction upon this, ground, may adjust the entire liability of all the parties and enforce the payment of the whole debt against all the obligors, in rent.
The statute applies as well to “effects’’ as to choses in action; and therefore, if the absentee, Dickerman, had any interest in the stock in trade in the possession of his co-partners, when the bills were filed, the Chancellor had jurisdiction. Moore vs Simpson, 5 Littell’s Rep. 49; Lyon vs Johnson, 3 Dana, 544.
And there can be as little doubt that, if the alleged transfer to his co-partners was fraudulently contrived to embarrass their creditors, or prevent the conservative *299 remedy by bill for sequestration, any of those creditors had a right to proceed by bill for setting aside the collusive transfer, and for sequestering and subjecting the stock thus fraudulently attempted to be placed beyond the pale of the act of 17-96. Watts vs Griffin, Lit. Sel. ca. 244.
One of 3 partners having left the state, bills of sequestration were filed against him (as an absent def’t.) and his partners, to subject the joint effects to the payment of partnership debts They all answer, alleging that the absent def’t. before he left the state, sold all his interest in the joint stock to the others; and afterwards, filed a writing to that effect. But as there is no other proof of any actual sale; none of the genuineness of the writing, and no witness to it, the proof of a sale is held insufficient. And if there was proof of the execution of the writing—as the recited consideration is merely nominal, and there is no evidence that the vendees had agreed to pay off the partnership debts; as the answers allege that the absent deft. left Ken. “about the 1st of Sept. 1834,” and the paper is dated that very day, in Alabama,—the presumption is strong, that it was contrived & made after the sequestration bills wer filed & to defeat their objects; it sho’d be deemed merely colorable and be set aside.
Upon the subject of jurisdiction, then, the only remaining question is, whether the alleged transfer was valid and should be -regarded as effectual. And we are satisfied that it should not be so considered, for two reasons first — there is no proof that any such sale had ever been made; there is no proof even- of the genuineness of the exhibit purporting to be a bill of sale, and the allegation in the bills that the complainants had heard that there had been “some pretended transfer,” is no admission that there had been, in fact, any sale, or that the one described in the exhibit had actually been made.
Secondly. If such a transfer as that specified in the exhibit was ever made, it should, in our opinion, be deemed to have been, as charged, merely colorable and fraudulent; because the consideration is merely nominal, and there appears to have been no agreement that Wilcox and Lynde should pay all the debts of the firm; and because, as the answers admit the allegation in the bills, that Dickerman left this State “about the 1st of September, 1834,” and the bill of sale, as exhibited, purports to have been executed in Alabama on the 1st of September, 1834, and was probably not in the possession of Wilcox and Lynde when they filed their answers, (for they say the sale was made “about the 1st of September, 1834,”) the presumption is strong, that the bill of sale was not executed until after the bills were filed, and then only because Wilcox and Lynde, to prevent the sequestration of the books, had alleged that they had bought their absent co-partner’s interest, and it became important to the fraudulent end of selling the books, and evading the payment of debts, to defeat the attachments in chancery, which could not be maintained unless the absent debtor had an interest in the partnership stock.
We are, therefore, of the opinion that the Chancellor had jurisdiction, and that his decrees are substantially right.
An allegation in bill for sequestration, that the effects to be seized, had been transferred to a person since dead but who renounced the purchase, does not show that his heirs are indispensable parties.
Townsend’s unknown heirs were not indispensable parties: first — because it does not appear from the bills or otherwise, that Townsend had or ever claimed any available interest in the property sought to be subjected. Second — as the bills, only alleged that there had been a “pretended transfer” of the books to him, and which he had renounced, a general traverse filed for his unknown heirs would, in fact, deny that he or they had any interest in the books; and, thirdly — the decrees as rendered, will not divest Townsend’s representatives of their interest have any; and therefore, as no interest in them has been clearly shown to exist, we will not reverse merely because those representatives were not made parties.
Having thus noticed the only points deemed worthy of consideration, and perceiving no substantial error to the prejudice of the plaintiffs in any one of the decrees, they are, therefore, all affirmed.